**SO ORDERED.**

**SIGNED this 29th day of September, 2015.**

_____
BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Emil Richard Dovan, Jr., | ) | Case No. 13-10820C-13G |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| Michael Kaczkowski, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 13-2055 |
| | ) | |
| Emil Richard Dovan, Jr., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

<u>MEMORANDUM OPINION</u>

Plaintiff brought this adversary proceeding to determine the dischargeability of a prepetition judgment for fraud based upon a jury verdict entered against the Debtor Emil Richard Dovan, Jr. ("Debtor" or "Dovan") by the United States District Court for the Southern District of Mississippi (the "District Court") [Adv. No. 13-2055, Doc. # 25, Exhibit B] (the "Judgment").[1] The Judgement was affirmed by the United States Court of Appeals for the Fifth Circuit in a <u>per</u>

---

[1] The underlying litigation that resulted in the Judgment shall be referred to as the "Mississippi Litigation."

curiam opinion.  [Adv. No. 13-2055, Doc. # 25, Exhibit C].  This Court finds that the Judgment

is a non-dischargeable debt for fraud under 11 U.S.C. § 523(a)(2).

## Procedural Background

Michael Kaczkowski ("Plaintiff" or "Kaczkowski") timely filed a complaint in this Court

against the Debtor, requesting that the Court determine the Judgment is non-dischargeable under

11  U.S.C.  §§  1328(a)(2)  and  523(a)(2)  [Adv.  Pro.  13-2055,  Doc.  #  1]  (the  "Original

Complaint").  The Original Complaint alleged only the existence of the Judgment, recited the

jury instructions given by the District Court, attached the underlying state court complaint, the

notice of removal to the District Court, the jury verdict, the Judgment, and the opinion of the

Fifth Circuit, and thereupon requested that this Court declare the Judgment non-dischargeable.

On December 31, 2013, the Plaintiff filed his first motion for summary judgment, requesting that

the Court determine that the Judgment was non-dischargeable based upon collateral estoppel of

the jury verdict and Judgment [Doc. # 12].  On April 17, 2014, the Court denied the first motion

for summary judgment, finding that the jury verdict was insufficient to establish each element

required under 11 U.S.C. § 523(a)(2) [Doc. # 18].  Specifically, the jury instructions in the

Mississippi Litigation required that the jury find that Dovan "did know that the representation

was false or was ignorant of its truth; . . . that Emil Dovan did intend that the representation

should be acted upon by Michael Kaczkowski; . . . [and] that Michael Kaczkowski did have a

right rely on the representation." [Doc. # 25, Exhibit C, p.6] (emphasis added).  Based upon the

jury instructions and the fact that the jury refused to impose punitive damages in the Mississippi

case, the Court determined that the jury instructions did not establish by collateral estoppel that

the Debtor knew his representations were false at the time that he made them.  The Court also

questioned: (a) whether the Mississippi law standard of intent by the defendant for the plaintiff to

2

act in reliance was the same standard as intent to deceive under 11 U.S.C. § 523(a)(2); and (b) whether the "right to rely" standard under Mississippi law constitutes justifiable reliance under 11 U.S.C. § 523(a)(2). Therefore, the Court denied summary judgment.

After the Court denied summary judgment, the Plaintiff filed an Amended Complaint [Adv. Pro. 13-2055, Doc. # 25] (the "Amended Complaint"), specifically alleging certain facts underlying the Judgment, and asserting that those facts rendered the Judgment non-dischargeable. After filing the Amended Complaint, the Plaintiff filed his second motion for summary judgment on December 4, 2014 [Doc. # 33], seeking to narrow the issues for trial. On February 17, 2015, the Court entered its Order Denying in Part and Granting in Part Plaintiff's Motion for Partial Summary Judgment and Narrowing of Issues for Trial [Doc. # 39] (the "Second Summary Judgment Order"). In the Second Summary Judgment Order, the Court concluded that the following issues were collaterally estopped by the Judgment and the underlying jury verdict: (a) that the Defendant made representations to the Plaintiff; (b) that the representations were false; (c) that the Defendant intended that the Plaintiff rely upon the representations; (d) that the Plaintiff did in fact rely upon the representations; (e) that the Plaintiff suffered loss as a result of his reliance upon the representations; and (f) that the damages were established by the amount of the Judgment. The Second Summary Judgment Order therefore narrowed the issues for trial to the following: (a) whether the Defendant knew that the representations were false; (b) whether the Defendant intended to deceive the Plaintiff; and (c) whether the Plaintiff justifiably relied upon the representations.

Pursuant to the Court order, the parties filed Joint Stipulations and Statements by Plaintiff and Defendant on June 23, 2015 [Doc. # 54] (the "Pre-Trial Stipulations"). In the Pre-Trial Stipulations and consistent with the Second Summary Judgment Order, the parties stipulated to

the following facts: that the Defendant made representations to the Plaintiff; that the representations were false; that the Defendant intended the Plaintiff to rely upon the representations; that the Plaintiff did in fact rely upon the representations; that the Plaintiff suffered loss as a result of the representations; and that the damages were established by the Judgment.

The adversary proceeding came before the Court for trial on July 9, 2015. The Court, having considered the arguments, filings, and memoranda submitted by the parties, the evidence presented and admitted at the hearing, the testimony and demeanor of the witnesses, and the record in this case, finds the debt owed to the Plaintiff by the Debtor as ordered by the Judgment in the amount of $168,000 and asserted as Claim Number 11 in Debtor's Case No. 13-10820C-13G is non-dischargeable under 11 U.S.C. §§ 1328(a)(2) and 523(a)(2).

FACTS[2]

Kaczkowski and Dovan met in 1999. At the time, Kaczkowski lived in New York and was a 50% owner of a business. Dovan had established himself in Mississippi, and both men worked in the field of prosthetics, although Kaczkowski had more experience and expertise with the design and function of prosthetic devices. At some time prior to the summer of 1999, Dovan contacted Kaczkowski and proposed that they jointly enter a business venture wherein Kaczkowski would design prosthetic devices and Dovan would run the business aspects of the venture. After various discussions regarding the proposal, Kaczkowski sold his business and moved to Mississippi to work with Dovan starting a new company that would focus on prosthetic hands. Dovan intended to use Kaczkowski's skills in the area of prosthetics to create a new business called Alatheia Prosthetics Rehabilitation, LLC ("Alatheia"). Alatheia was formed in

---

[2] The following facts constitute the Court's findings of fact pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Bankruptcy Rule 7052.

June of 1999.  Kaczkowski contends that Dovan enticed him to sell his prior business and move with his family to Mississippi based upon a representation that Kaczkowski would become a co-owner in Alatheia, and that Dovan continued these representations of co-ownership to Kaczkowski over the next nine years during the operation of the business.  Kaczkowski also contends that Dovan repeatedly assured Kaczkowski that he would put Kaczkowski's co-ownership in writing at any time that Kaczkowski requested.

At the inception of the business, around July, 1999, Dovan, Kaczkowski, and a third potential business investor named Richard A. Psonak, met to discuss the financing of Alatheia.  [See Defendant's Exhibit 1].  Dovan drafted a document for the meeting that provided each of the three men would contribute $25,000 in capital to the business and have a 33.33% ownership of the LLC (the "Business Proposal").  However, Kaczkowski testified that Dovan told him specifically that an actual contribution from Kaczkowski would not be required.  At some time later, Richard A. Psonak backed out of having any part in Alatheia.  Neither Psonak nor Kaczkowski made capital contributions in the amount of $25,000 to the company as contemplated in the draft Business Proposal.

Dovan contends that the company was solely owned by him and that Kaczkowski became merely an employee, not an owner, as Kaczkowski never contributed any capital to Alatheia.  Dovan testified that he and Kaczkowski had a "deal" from the beginning of their business relationship that Kaczkowski would only be an owner of Alatheia if one of three things happened: (1) Kaczkowski contributed sufficient capital to the company; (2) the company made enough money for Dovan to recover half of the funds he initially invested; or (3) another investor contributed enough capital for Dovan to recover half of the funds he initially invested.  Dovan testified that Kaczkowski was aware of these conditions to the "deal," as evidenced by the

Business Proposal. Dovan also testified that any statement he made representing that Kaczkowski would be an owner in the business or a "partner" was not false because, as a result of the "deal," such a statement was expressly conditioned upon the contribution of capital.

Kaczkowski was surprised by the capital contribution mentioned in the Business Proposal and questioned Dovan about that provision because, due to Dovan's representations, he thought he already was an owner. Dovan had previously and repeatedly represented to Kaczkowski that Kaczkowski was an owner of the business and, as an owner, was expected to put in more hours and effort as "sweat equity." When Kaczkowski asked Dovan why there was a capital contribution in the draft proposal, Dovan reassured him that it was a formality and only applied to Psonak. Based upon Dovan's reassurances, Kaczkowski believed that the amount of work he put into Alatheia, the talent he brought to the company, and the amount of personal money he put into supplies fulfilled his obligation to make any capital contribution. Kaczkowski does not dispute that he also was an employee of Alatheia. He received a pay check from Alatheia as an employee, and the business paid for Kaczkowski's personal home electrical bill on occasion because he worked late into the evening at home.

Newspaper reports about Alatheia similarly reflected that Kaczkowski was an owner. An article published in The Rankin in August, 2000, about the creation of Alatheia refers to Plaintiff and Defendant as "business partners." [See Plaintiff's Exhibit 1, Dale Rose, Alatheia: Truth as Deception, The Rankin, August 31, 2000, at 14]. Dovan was present for the entire interview, and the article contains a number of statements attributed to Dovan. Dovan testified he invited the interview and was present but did not make any statements during the interview and did not see a copy of the publication prior to its printing. Kaczkowski testified that Dovan spoke during the interview and that the quotes in the report are accurate. Kaczkowski further testified that, when

he stated to the reporter that they were partners, Dovan remained silent.  Kaczkowski's testimony is more credible. Dovan made the statements in the article and remained silent when Kaczkowski stated that they were partners.   Dovan's statements and silence at the interview furthered Kaczkowski's understanding that Kaczkowski was in fact an owner of the business and that Dovan would formalize the agreement upon his request.

From the founding of Alatheia in 1999, Keith A. Pearson, CPA, was Alatheia's outside accountant and completed its tax returns, which were filed as part of Dovan's tax returns. Pearson had numerous conversations with Dovan concerning Kaczkowski's wish to become a partner from the inception of Pearson's involvement with the business.  During the same time period that Dovan continued to assure Kaczkowski that they were co-owners of the business and that he would formally document it at any time upon Kaczkowski's request, Pearson testified that Dovan had many times called Pearson and stated that, while "Michael wants to be an owner," Dovan had no intention of making him an owner unless Dovan were first fully compensated for his capital contributions. Pearson further testified that he and Dovan agreed there was no reason for Kaczkowski to become an owner unless and until Kaczkowski contributed capital, or Dovan was able to reimburse himself for his investment from company profits or a new investor.  Pearson's testimony, offered by Dovan, demonstrated that Dovan did not consider Kaczkowski an owner, and, from the inception of the business, did not intend to make him an owner unless certain conditions were met.   This testimony is consistent with Dovan's current position that he never intended to make Kaczkowski an owner absent contribution of capital or otherwise reimbursing Dovan for his out of pocket expenses of approximately $400,000 to $450,000.

7

Kaczkowski acknowledged he never filed taxes representing that he was an owner. When he would ask Dovan about filing taxes, Dovan advised it was a bad idea as there was no official paperwork reflecting his ownership. Dovan reassured Kaczkowksi that he was an owner and that they would "paper it" at the right time. Kaczkowksi stated that he always believed he was half owner based upon Dovan's assurances. It was not until 2008 when he realized that Dovan had never intended to make him an owner.

On April 21, 2003, Dovan forwarded an email to Kaczkowski that simply stated attached was a copy of "our business plan, a work in progress." [Plaintiff's Exhibit 2] (the "Business Plan"). The Business Plan includes a section describing a "Management Team," and states that the team will consist of two (2) people. Kaczkowski is listed as "President and General Manager," while Dovan is listed as the "Vice President, Chief Financial Officer, and Administration" [sic]. There is biographical information about Kaczkowski but none about Dovan. In another section of the Business Plan, the "Legal Form of Business" states:

> The legal form of Alatheia is a Limited Liability Company. We chose the Limited Liability Company form because we qualify, by being a domestic company and no officers are non-residents. This form was also selected because this enables us to have tight control of our company, only 2 shareholders, and plan to keep it closely held, and for the liability protections it provides.

Dovan contends that the draft Business Plan is inaccurate because Kaczkowski was not an owner or shareholder. He further contends that the business plan was not a representation and that both men understood the Business Plan was "a work in progress," as indicated by its "draft" label. Nevertheless, the Court finds that the draft Business Plan corroborates Kaczkowski's testimony regarding Dovan's representations and Kaczkowski's understanding with respect to ownership in Alatheia  Dovan testified that the Business Plan was created by him but changed and enhanced by both him and Kaczkowski. Dovan also concedes that he wrote the Legal Form of Business Section in the Business Plan. At the time the Business Plan was created, Dovan stated it was not

true that there were two stockholders.  Dovan testified that although the statement of stockholders was inaccurate at the time, it was a plan for the creation of Alatheia and not a statement of actual fact.  Dovan stated he knew at the time of drafting the Business Plan that Kaczkowski was not yet an owner of Alateia, but that they wanted him to be, conditioned upon Kaczkowski making a monetary capital contribution equal to the cash previously infused by Dovan.

Although no final written business plan ever was generated, the parties carried on in business until 2008 at which time Kaczkowski demanded in an email that Dovan put Kaczkowski's ownership in writing.  [See Plaintiff's Exhibit 4].  In an email sent to Kaczkowski on July 10, 2008, Dovan responded to Kaczkowski's request:

> Mike, I made a deal with you 10 years ago – the deal is the deal.  I DO NOT NEED TO PUT ANYTHING IN WRITING [sic].  We agreed and shook on it.  In reality, if I had issued the stock when we started, we would be sitting around the table now with Rick Psonak and Debbie Kaczkowski negotiating with them to tender their stock so that we can cut the next deal.  I believe that it was a wise decision to wait until now.

[Plaintiff's Exhibit 3].[3]  The emails from July 10 and 11 show that Kaczkowski thought the "deal" was, "Mike, I'll put it [your ownership and stock holdings] in writing whenever you want."  [Plaintiff's Exhibit 5].  Based upon the evidence presented, and the demeanor and testimony of the witnesses, the Court finds that Dovan repeatedly represented to Kaczkowski that he was an owner in the business and that Dovan would memorialize that ownership in writing whenever Kaczkowski asked, at and during times when Dovan knew that he did not consider Kaczkowski and owner and had no intention of making him an owner unless and until Dovan was paid back his perceived investment in the venture.

---

[3] Debbie Kaczkowski is Kaczkowski's ex-wife, whom he divorced during the time between the founding of Alatheia and 2008.

Shortly after the July email exchange, Kaczkowski made a business trip to New York. Upon returning, Kaczkowksi discovered that he had been locked out of his office and Dovan was attempting to sell the company. Dovan purported to fire Kaczkowski and refused to acknowledge Kaczkowski's ownership or any beneficial interest in the company. The Mississippi Litigation followed.

<u>THE MISSISSIPPI LITIGATION</u>

Kaczkowski alleged in his complaint in the Mississippi Litigation that Dovan induced him to leave his former employment and become a partner with Alatheia, resulting in financial and other injury. Kaczkowski further alleged that Dovan fraudulently misrepresented to Kaczkowski that Kaczkowski was a partner in Alatheia, and that this fraud also resulted in financial and other injury. <u>See</u> [Adv. No. 13-2055, Doc. # 25, Exhibit C, p. 2] (the "Fifth Circuit Opinion"). The complaint alleged various causes of action all of which ultimately were dismissed either by the District Court or by Kaczkowski (the record is unclear). The only claim to go to the jury was common law fraud under Mississippi law. Kaczkowski obtained the Judgment against Dovan for Mississippi common law fraud on the basis that Dovan never intended Kaczkowski to become a partner, and the court awarded Kaczkowski $168,000 [Adv. No. 13-2055, Doc. # 25, Exhibit B]. Dovan appealed the Judgment, and it was affirmed by the Fifth Circuit Court of Appeals in a per curiam opinion. [Adv. No. 13-2055, Doc. # 25, Exhibit C].

As the court instructed the jury in the Mississippi Litigation (the "Jury"), in order for Kaczkowski to recover from Dovan on a claim of fraud in Mississippi, Kaczkowski had to prove, by clear and convincing evidence, the following:

> [O]ne, Defendant Emil Dovan made a representation to plaintiff about a past or present fact; two, that the representation was false; three, that the representation

10

> was material; four, that Emil Dovan did know that the representation was false or
> was ignorant of its truth; five, that Emil Dovan did intend that the representation
> should be acted upon by Michael Kaczkowski; six, that Michael Kaczkowski did
> not know that the representation was false; seven, that Michael Kaczkowski did
> rely on the representation's truth; eight, that Michael Kaczkowski did have a right
> to rely on the representation, and; nine, that Michael Kaczkowski suffered
> damages as a result of his reliance on the representation . . . .

[Adv. No. 13-2055, Doc. #25, Exhibit C, p. 6]. The Jury announced in open court a verdict in favor of Kaczkowski in the amount of $168,000 against Dovan and entered a final judgment in favor of Kaczkowski. [Doc. #25, Exhibit B].

<u>ARGUMENTS</u>

Plaintiff argues that: (a) Dovan's repeated representations that Kaczkowski's was an owner and partner in Alatheia and that he would formalize the agreement at any time upon Kaczkowski's request were false; (b) Dovan knew that these representations were false; (c) Dovan intended to deceive Kaczkowski; (d) Dovan intended that Kaczkowski rely upon his representations; (e) Kaczkowski justifiably relied upon the representations; (f) and the Judgment determined the amount of damages suffered by Kaczkowski as a result of his reliance upon the misrepresentations.

Defendant argues that the Jury, while finding there was a misrepresentation, never identified the misrepresentation. Defendant also states that neither the evidence, nor collateral estoppel established which statement was the misrepresentation upon which the Judgment and Jury's verdict are based. Defendant further argues that the Jury only awarded compensatory, but not punitive, damages and thus indicated the Jury did not think Dovan knew what he was saying was false.

At the closing of Plaintiff's evidence, Plaintiff moved for directed verdict. Plaintiff contended the Business Plan and other omissions or statements were all representations upon

which Kaczkowski relied and was induced into joining Dovan in his business. Plaintiff further contended that Dovan, in the press and in business plans, represented to other outside parties that he and Kaczkowski were equal business partners.  Plaintiff asserts that Dovan knew the statements in the press articles and business plans were false at the time they were made.  The Court denied the Plaintiff's motion before the Defendant's presentation of his defense.  At that time, the Defendant did not move for directed verdict or for judgment on partial findings of fact under Rule 52(c) of the Federal Rules of Civil Procedure, which would have been more procedurally appropriate in a bench trial.

At the closing of Defendant's evidence, Plaintiff again moved for directed verdict.  The Court denied the motion.  The Defendant did not move for directed verdict or for judgment on partial findings.

<u>ANALYSIS</u>

Section 1328(a)(2) excepts from discharge certain debts of the type defined under 11 U.S.C. § 523(a).  Section 523(a) does not create liability of a debtor to a creditor.  Instead, it merely provides potential bases upon which a debt established under non-bankruptcy law will be excepted from the debtor's discharge.  The underlying liability is established by other applicable (state or federal) law.  <u>In re Eisaman</u>, 387 B.R. 219, 223 (Bankr. N.D. Ind. 2008).  <u>See also</u> <u>Grogan v. Garner</u>, 498 U.S. 279, 283-84, 111 S.Ct. 654, 657-58 (1991) (the validity of a creditor's claim is an issue determined by state law, but the issue of nondischargeability is a matter of federal law governed by the Bankruptcy Code).  In this case, the underlying debt for fraud has been established under Mississippi law by the Judgment, the claim is <u>res judicata</u> and binding on this Court, and this Court cannot replace the Judgment with its own determination of liability in a dischargeability action.  <u>See</u> <u>In re Heckert</u>, 272 F.3d. 253, 257-258 (4th Cir. 2001).

All that remains, therefore, is for the Court to determine whether the liability established by the Judgment is non-dischargeable under 11 U.S.C. § 523(a)(2).

Section 523(a)(2) provides that a discharge will not discharge the debtor's liability for any debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

11 U.S.C. § 523(a)(2).  Although the Jury in the Mississippi Litigation found that Defendant owed a debt to the Plaintiff based on Mississippi common law fraud, as indicated above the determination of a non-dischargeability action under Section 523(a) is a question of federal law, not state law.  In re Bozzano, 183 B.R. 735, 738 (Bankr. M.D.N.C. 1995) (a determination of whether a debt that arises from state law is dischargeable is a question of federal bankruptcy law).  See also In re Ball, 257 B.R. 309, 314 n. 9 (Bankr. D. Ariz. 2001) ("states are not free to define what constitutes 'fraud' for purposes of discharge").  The elements necessary to establish false pretenses, a false representation, or actual fraud under § 523(a)(2) are: (1) that the debtor made a representation; (2) that the debtor knew the representation was false at the time it was made; (3) that the debtor intended to deceive the creditor; (4) that the creditor relied on the representation; and (5) that the creditor sustained a loss as a result of that reliance.  In re Casper, 466 B.R. 786, 793 (Bankr. M.D.N.C. 2012); In re Highfill, 336 B.R. 701, 706 (Bankr. M.D.N.C. 2006).

      a.     The Judgment, jury verdict, and the evidence established misrepresentations upon which a dischargeability claim may be based.

In applying the federal standards to the dischargeability claim, the Court nevertheless is bound by factual determinations in the Mississippi Litigation.  As this Court ruled at summary

judgment, collateral estoppel and res judicata apply in bankruptcy dischargeability proceedings. See e.g., In re Spigel, 260 F.3d 27, 33 (1st Cir. 2001) (ordinary rules of collateral estoppel and res judicata apply in most actions in the bankruptcy court, including adversary proceedings under Section 523). In order for collateral estoppel to apply to an issue, the issue in question must be identical to an issue actually litigated in a court of competent jurisdiction and necessary to the judgment in a prior action between the same parties or their privies. Sartin v. Macik, 535 F.3d 284, 287-88 (4th Cir. 2008) (citing Thomas M. McInnis & Ass., Inc. v. Hall, 318 N.C. 421, 349 S.E.2d 552 (1986)). The parties do not dispute that the Judgement is res judicata or that collateral estoppel applies to any findings by the Jury. However, as he previously but unsuccessfully argued on appeal before the Fifth Circuit, Dovan argues that it is fatal to Kaczkowski's claim that the Jury was not asked to specify "which facts Dovan misrepresented and when each of those facts was misrepresented." [Doc. # 25, Exhibit C, p. 5]. Dovan now similarly argues that, since the Jury did not identify the misrepresentation, the fact that he made a misrepresentation for purposes of a non-dischargeability claim has not been established by collateral estoppel. As did the Fifth Circuit before it, this Court rejects Dovan's arguments based upon the Jury's failure to specify the particular misrepresentation. The Judgment, jury verdict, and evidence presented at trial in this case establish misrepresentations sufficient to support a claim for non-dischargeability under 11 U.S.C. § 523(a)(2).

The record of the proceedings in the Mississippi Litigation amply demonstrates that the alleged misrepresentations upon which the Jury based its verdict were Kaczkowski's alleged ownership in Alatheia and Dovan's promise to formalize it at any time. [See Doc. # 25, Exhibit C, p.2]. As this Court previously ruled, the existence of a misrepresentation was established by the jury verdict and the jury instructions, and the parties in this adversary proceeding correctly

14

stipulated to that fact in the Joint Stipulations and Statements by Plaintiff and Defendant filed with this Court on June 23, 2015. [Doc. # 54].

Even if the record in the Mississippi Litigation and the stipulations had been insufficient to establish the existence and nature of the misrepresentations upon which the Judgment is based, the evidence presented in this case is sufficient to establish both the fact of misrepresentations and the nature of the misrepresentations for purposes of dischargeability. Kaczkowski testified at the trial that the only alleged misrepresentations upon which his claims were based in the Mississippi Litigation were that Dovan repeatedly assured him that they were co-owners and that the ownership would be memorialized at any time Kaczkowski requested. Having considered the testimony of all parties and the credibility of all witnesses, the Court has concluded that Dovan falsely and continuously represented to Kaczkowski both that Kaczkowski was an owner of Alatheia and that Dovan would formalize his ownership at any time Kaczkowski requested. Plaintiff testified that Dovan told him numerous times that his work level, which involved working so much his wife left him and the business began paying his electricity bills, was appropriate given that he was a partner in the business. Dovan admits he never told Plaintiff that he was not a partner, which is inconsistent with Dovan's testimony that he was clear that the alleged "deal" for making him an owner was conditional.

These misrepresentations include both representations of an existing factand a promise to undertake future actions. The Jury's verdict in this case was based upon Mississippi law. Under Mississippi law, a representation based upon a promise to perform some act in the future may form the basis of fraud when the declarer has no intention of performing at the time of the representation. See In re Huffman, 505 B.R. 726, 766 (Bankr. S.D. Miss. 2014) (citing Bank of Shaw v. Posey, 573 So.2d 1355, 1360 (Miss. 1990)). Bankruptcy courts similarly have permitted

promissory statements to form the basis for a misrepresentation in non-dischargeability actions if it can be shown that the declarant had no intention of performing the action at the time he made the promise.  See In re Kukuk, 225 B.R. 778, 783-84 (10 Cir. BAP 1998) (citing Field v. Mans, 516, 59, 116 S.ct. 437 (1995), and relying on the Restatement (Second) of Torts § 525 (1976), for the proposition that "a statement that is in form a . . . promise as to the future course of events may justifiably be interpreted as a statement that the maker knows of nothing which will make the fulfillment of his . . . promise . . . improbable"); Palmacci v. Umpierrez, 121 F.3d 781, 787 (1st Cir. 1997) ("[i]f, at the time he made his promise, the debtor did not *intend to perform*, then he has made a false representation . . . ." under § 523(a)(2) (emphasis in original)); In re Pusateri, 432 B.R. 181, 200 (Bankr. W.D.N.C. 2010) (citing Palmacci); In re Hill, Bankr. Case No. 05-12590-BGC-7, Adv. Pro. No. 12-00043, 2013 W.L. 5230263, *6 (Bankr. N.D. Ala. September 16, 2013) (collecting cases).

Having considered the evidence and the testimony of the witnesses, the Court has accepted Kaczkowksi's testimony in this case that Dovan represented that they were equal and unconditional co-owners of Alatheia and that Dovan would document that at any time Kaczkowski requested.  As a result of this finding, Dovan's own evidence establishes that these were misrepresentations.  Dovan testified that he did not consider Kaczkowksi an owner and did not intend to consider him for ownership unless and until Dovan was reimbursed for his investments.  This remains Dovan's testimony, which his accountant corroborates.  Therefore, in addition to the repeated and continuous misrepresentation that they were co-owners, the evidence demonstrated that Dovan never intended to make Kaczkowksi an owner upon request.

       b.    <u>Dovan knew that the representations were false at the time he made them.</u>

Having found that Dovan made these misrepresentations, there can be little dispute that Dovan knew that these representations were false at the time he made them.  Dovan remains

16

steadfast that he had no intention of making Kaczkowski an owner in the business unless and until Dovan was reimbursed for his capital contributions to the company—either by a new investor or by company profits.  Pearson's testimony demonstrates that Dovan had no intention of making Kaczkowski an owner at the time that he was reassuring Kaczkowski that the "deal" was that he was an owner and that Dovan would "paper" his ownership at any time upon request. In stating to Pearson that Kaczkowski wanted to be a partner, Dovan demonstrated that he knew at the time that Kaczkowski was not actually a partner and that he did not intend to make him one.  During that same time, according to Kaczkowski's testimony, Dovan continued to represent to Kaczkowski that he was in fact a partner.  Toward the end of the business relationship, and around 2008 with the exchange of emails admitted as Plaintiff's Exhibits 3, 4, & 5, Dovan continued to be deceptive, leading Kaczkowski to continue to believe he was a partner, but reassuring him that it was unnecessary to acknowledge his status in writing.

      c.    <u>Whether the Defendant Intended to Deceive the Plaintiff</u>

Fraudulent intent for purposes of 11 U.S.C. § 523(a) may be proven by either direct or circumstantial evidence.  <u>See e.g.</u>, <u>Pusateri</u>, 432 B.R. at 200.  The determination of the debtor's intent is a question of fact, which can be inferred from a totality of circumstances.  <u>See In re Hartley</u>, 479 B.R. 635, 642 (S.D.N.Y. 2012).  The intent required for purposes of § 523(a)(2) "does not require a finding of malevolence or personal ill will; all it requires is a showing of intent to induce the creditor to rely and act on the misrepresentations in question."  <u>In re Glatt</u>, 315 B.R. 511, 520 (Bankr. D.N.D. 2004).  <u>See also In re Bebber</u>, 192 B.R. 120, 124 (W.D.N.C. 1995) (citing <u>In re Kimzey</u>, 761 F.2d 421 (7th Cir. 1985), for the proposition that an intent to deceive may be inferred from a false representation that the debtor should have known would induce the creditor).

The Jury found the Debtor intended to induce the Plaintiff. This conclusion by the Jury, combined with the Court's determination that Dovan made a knowing misrepresentation to Kaczkowski herein, is sufficient to establish the element of intent to deceive for purposes of dischargeability.

        d.    <u>The Plaintiff was justified in relying on the representation</u>

A plaintiff must "justifiably rely" upon any misrepresentation that forms the basis for non-dischargeability under § 523(a)(2)(A). <u>See</u> <u>Field v. Mans</u>, 516 U.S. 59 (1995) (using common law definition of actual fraud to construe the statutory meaning of fraud and find justifiable reliance was intended and determining that reading reliance out of the statute would produce absurd results). The evidence and the facts determined by the Court in this case, combined with the Jury's finding that Kaczkowski had "a right to rely on the representation," similarly establishes justifiable reliance under § 523(a)(2)(A). The standard for justifiable reliance is less than reasonable reliance, and is "a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." <u>Id.</u> at 71 (quoting Restatement (Second) of Torts, § 537 (1976)). A person must, however, "use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." <u>Id.</u> As with all other elements of dischargeability, justifiable reliance must be demonstrated by a preponderance of the evidence. <u>Grogan</u>, 498 U.S. at 286, 111 S.Ct. at 659.

In an action for misrepresentation under Mississippi law, a plaintiff must prove by clear and convincing evidence that he had a "right to rely" on the representation. <u>Rankin v. Brokman</u>, 502 So.2d 644, 645 (Miss. 1987). This is a higher standard to meet than justifiable reliance, and requires that a plaintiff further have made a reasonable inquiry into a representation. <u>See</u>

Holland v. Peoples Bank & Trust Co., 3 So.3d 94, 100 (Miss. 2008) (finding the plaintiff should have reasonably known the defendant lacked the authority to lend a certain amount of offered money and therefore the offer could not have been complete without further authorization).  In contrast, a dischargeability plaintiff may justifiably rely upon a misrepresentation even if the fraud would have been detected if there had been an investigation.  In re Vetal, 433 B.R. 524, 531 (Bankr. D.Md. 2010) (citing Field v. Mans, 516 U.S. at 72, 116 S.Ct. at 437)).   The right to rely standard further considers whether there is any imbalance in the relationship between debtor and creditor, such that when one party has an advantage over another party in experience, knowledge, and wisdom.  If there is such an imbalance, the court is more likely to find that a plaintiff had a right to rely upon the representation.  See Martin v. Winfield, 455 S.2d 762, 765 (Miss. 1984) (quoting Fornea v. Goodyear Yellow Pine Co., 178 So. 914, 917 (1938).  Justifiable reliance similarly considers the qualities and characteristics of the particular plaintiff and the circumstances of the particular case, rather than applying a community standard of conduct to all cases.  Vetal, 433 B.R. at 531.

The evidence established that Kaczkowski's reliance on Dovan's repeated misrepresentations in this case was justifiable.  Kaczkowski testified that he was very young and inexperienced when Dovan induced him to come to Mississippi to start Alatheia, but that Dovan was very experienced in business.  Kaczkowski further testified that he heavily relied upon Dovan's business experience in matters regarding business organization and conduct and the formalization of their agreements.  The Court finds that, in light of the totality of the circumstances of this case, Kaczkowski was justified in relying upon Dovan's representations and repeated assurances.  Moreover, the right to rely standard is a higher standard to meet than the justifiable reliance standard, and the Jury found that Kaczkowski had a right to rely on

Dovan's statements. Dovan is collaterally estopped from relitigating that issue here. Therefore, the Court concludes that Kaczkowski justifiably relied upon the misrepresentations.

<u>AMOUNT NON-DISCHARGEABLE</u>

Plaintiff is entitled to a finding of non-dischargeability for the amount of damage due to the misrepresentation of the Debtor. The Judgment establishes those damages in this case. The Jury found the damage on the account of misrepresentations to be $168,000. This Court may not issue its own judgment on the debt to replace the state court's judgment. <u>In re Heckert</u>, 272 F.3d 253, 255 (4th Cir. 2001) (when there is a prior state court judgment as a basis for the debt at issue, a bankruptcy court cannot issue its own judgment to replace the state court judgment previously obtained but may only determine the dischargeability of the debt). Where there is a prior judgment establishing the underlying liability, this Court only may decide whether the debt based on the Mississippi Litigation is dischargeable. <u>See also</u> <u>In re Gertsch</u>, 237 B.R. 160, 172 (1999) (finding the bankruptcy court did not have jurisdiction to add post-judgment interest through the date of its judgment but only to determine the judgment should be found non-dischargeable in whole or in part).

<u>CONCLUSION</u>

For the reasons set forth herein, the Court will enter JUDGMENT in favor of Kaczkowski and against Dovan, determining that the liability represented by the Judgment is NON-DISCHARGEABLE under 11 U.S.C. § 523(a)(2)(A).

[END OF DOCUMENT]